1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10   JOSEPH GERBERY, *et al.*,                    CASE NO. 13-CV-614-MMA(DHB)

11                                 Plaintiffs,     **ORDER GRANTING DEFENDANT**
                                                   **MOTION TO DISMISS FIRST**
12         vs.                                     **AMENDED COMPLAINT**

13   WELLS FARGO BANK, N.A., *et al.*,             [Doc. No. 10]

14                                 Defendants.

15          On April 11, 2013, Plaintiffs Joseph and Adelaida Gerbery filed a First

16   Amended Complaint ("FAC") against Defendant Wells Fargo Bank, N.A. ("Wells

17   Fargo"), alleging unfair business practices in violation of California Business and

18   Professions Code sections 17200 *et seq.*, fraud, negligent misrepresentation,

19   promissory estoppel, and breach of contract.  Wells Fargo now moves to dismiss

20   Plaintiffs' FAC.  The Court **GRANTS** Wells Fargo's motion to dismiss all claims

21   with leave to amend.

22                          **I.   FACTUAL BACKGROUND**

23          Plaintiff Joseph Gerbery is a disabled veteran who is currently employed by

24   the Navy.  [FAC ¶¶ 32, 33.]  On February 21, 2007, Joseph and his wife, Adelaida

25   Gerbery, borrowed $396,000 from World Savings Bank, FSB.  [FAC ¶ 15; Exh. B.]

26   The loan was secured by a deed of trust recorded against 808 Plaza Taxco, San

27   Diego, California 92114.  [FAC ¶ 1; Exh. A; Doc. No. 10 at 1-2.]  Plaintiffs allege

28

that Wells Fargo represented their mortgage would be a 30-year fixed term, and that their monthly payments would not under any circumstances exceed $1450 per month for the life of the loan.  [FAC ¶ 19.]  Wells Fargo, on the other hand, asserts that Plaintiffs' loan was memorialized by an adjustable rate note.  [Doc. No. 10 at 1.] The note is not included in the exhibits filed by either party.

On February 18, 2009, the U.S. Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable ("MHA") program.  [FAC ¶ 6.]  MHA consists of two subprograms, known as the Home Affordable Refinance Program ("HARP") and the Home Affordable Modification Program ("HAMP").  *Id.*  HAMP is backed by federal funds allocated to the Troubled Asset Relief Program ("TARP").  [FAC ¶ 7.]  Any loan servicer that accepts TARP funds is required to participate in HAMP.  *Id.*  Wells Fargo is a loan servicer that accepts TARP funds and therefore its participation in HAMP is mandatory.  *Id.*

A loan servicer that participates in HAMP is also a party to the Servicer Participation Agreement ("SPA"), which requires servicers to collect income and hardship information to determine whether a borrower is eligible for a loan modification.[1]  [FAC ¶ 9.]  If appropriate, the servicer can offer the borrower a "Trial Period Plan," and if the trial period is successfully completed, the servicer may offer the borrower a permanent modification.  *Id.*

By 2011, Plaintiffs had learned that Wells Fargo engaged in alleged illicit activity, including:  misrepresenting Plaintiffs' ability to repay the loan; falsely inflating Plaintiffs' income without Plaintiffs' knowledge or consent so they could qualify for the loan; repeatedly representing to Plaintiffs that they qualified for a loan modification; and representing to Plaintiffs that modification of their loan was

---

[1] The purpose of a loan modification is to reduce principal and interest payments.

imminent.  [FAC ¶¶ 20, 21, 27, 30.]

Plaintiffs also allege Wells Fargo made material misrepresentations regarding the terms of their loan, including (i) that the mortgage was a fixed interest rate loan when it was actually a negative amortization loan; (ii) failing to mention that Plaintiffs' obligations would eventually realize an increase of 242% from $1450 to $3530.40 per month; and (iii) neglecting to notify Plaintiffs that their loan subjected them to a three-year prepayment penalty, thereby causing Plaintiffs to forgo alternative loans with more favorable terms.  [FAC ¶ 23.]

On February 9, 2012, the Department of Justice ("DOJ") issued a press release announcing a $25 billion joint federal-state civil settlement against the nation's five largest banks and mortgage servicers, which included Wells Fargo.[2]  [FAC ¶ 12.] Violations alleged by the DOJ and 49 state attorneys general included deceptive practices in the offering of loan modifications and failures to offer non-foreclosure alternatives before foreclosing on borrowers with federally insured mortgages.  *Id.*

Plaintiffs' first cause of action alleges that Wells Fargo violated California's Business and Professions Code sections 17200 *et seq.* by engaging in unfair business practices.  [FAC ¶¶ 36-39.]  Wells Fargo's alleged unfair business practices include: falsely promising Plaintiffs that Wells Fargo would accept and fairly review Plaintiffs' request for a loan modification; falsely promising Plaintiffs that they qualified for and would obtain a loan modification; purposefully understaffing the departments that handled loan modifications; and intentionally staffing those same departments with employees who were unable, incompetent, or directed not to cooperate with borrowers' requests.  [FAC ¶ 37.]  As a result of this conduct, Plaintiffs claim damages that include the risk of foreclosure on their property and the loss of opportunities to obtain an alternative loan with more favorable terms.

Plaintiffs' second cause of action alleges that Wells Fargo engaged in fraud by

---

[2] *See* http://www.justice.gov/opa/pr/2012/February/12-ag-186.html (DOJ press release).

13CV614

knowingly making material misrepresentations concerning the terms of Plaintiffs' loan. [FAC ¶¶ 40-45.] The alleged misrepresentations include Plaintiffs' income, conditions of repayment of the loan, duration of the loan, the interest rate on the loan, and promises to modify the terms of Plaintiffs' loan. [FAC ¶ 42.] As a result of their reliance on these misrepresentations, Plaintiffs assert that they lost opportunities to obtain alternative lending with more favorable terms. [FAC ¶¶ 43-44.]

Plaintiffs' third cause of action alleges negligent misrepresentation by Wells Fargo. [FAC ¶¶ 46-50.] Plaintiffs allege that Wells Fargo represented to them that a loan modification would only be possible if they defaulted on their loan. [FAC ¶ 47.] Plaintiffs allege that Wells Fargo intended to induce Plaintiffs to miss mortgage payments and eventually default on their loan so that Wells Fargo could initiate the foreclosure process. [FAC ¶ 49.]

Plaintiffs' fourth cause of action alleges promissory estoppel. [FAC ¶¶ 51-57.] They allege Wells Fargo made certain promises to Plaintiffs, including promises to modify their loan. [FAC ¶ 52.] As a result of their reliance on Wells Fargo's promises, Plaintiffs are now at risk of foreclosure on their home and have passed on opportunities to secure alternative lending with more favorable terms. [FAC ¶¶ 55, 56.]

Plaintiffs' fifth cause of action alleges breach of contract as a third party beneficiary to the SPA and to HAMP. [FAC ¶¶ 58-62.] They allege Wells Fargo breached the SPA and HAMP by approving them for a loan modification but not actually proceeding with the modification. [FAC ¶ 60.]

Plaintiffs allege that Wells Fargo intends to foreclose on their property. [FAC ¶ 34.] Plaintiffs also assert that they are current with all of their loan payments, have never missed a payment, and are willing and able to make reasonable and affordable loan payments. [FAC ¶¶ 33-35.]

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss pursuant to FRCP 12(b)(6)

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, the complaint "must contain allegations of underlying facts [sufficient] to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, and matters of which the Court takes judicial notice. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).  The Court must first identify pleadings which are no more than "legal conclusions" and, as such, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 680.  The Court then analyzes the complaint and accepts all remaining factual allegations as true, while drawing all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

To survive a motion to dismiss, a complaint must contain sufficient factual content to allow the Court to reasonably infer that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.  The factual allegations must be definite enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.  If the complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557.

Finally, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of additional or other facts. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**B.    Claims for Fraud Uunder FRCP 9(b)**

In alleging fraud, the plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Failure to satisfy this heightened pleading requirement can result in dismissal of the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

In general, the plaintiff's averments of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106. Specifically, plaintiffs are required to supplement allegations of fraud with "the who, what, when, where, and how" of the misconduct charged or, in other words, to specify the time, place, and content of the alleged misrepresentation, in addition to why the statement in question is false or misleading. *Id.* at 1106-07.

### III.    DISCUSSION

**A.    Wells Fargo's Request for Judicial Notice**

In support of its motion to dismiss, Wells Fargo requests that the Court take judicial notice of the following documents:

1.    Deed of Trust dated February 21, 2007, and recorded in the official records of the San Diego County Recorder's Office on March 8, 2007;

2.    Certificate of Corporate Existence of World Savings Bank, FSB, dated April 21, 2006, issued by the Office of Thrift Supervision, Department of the Treasury ("OTS");

3.    Letter dated November 19, 2007, on the letterhead of the OTS authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB ("Wachovia");

4.    Corporate Charter of Wachovia Mortgage, FSB, effective December 31, 2007, and signed by the Director of the OTS;

5.    Official Certification of the Comptroller of the Currency stating

that effective November 1, 2009, Wachovia converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.;

6.      Printout from the website of the Federal Deposit Insurance Corporation dated February 19, 2013, showing the history of World Savings Bank, FSB and its merger into Wells Fargo Bank, N.A.

A court may take notice of adjudicative facts not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

The exhibits submitted by Wells Fargo are government and public documents which each bear a government seal, the signature of a government official, or both. The accuracy of the exhibits is thus not subject to reasonable dispute, and they are the proper subjects of judicial notice. Courts have taken judicial notice of similar documents. *See Appling v. Wachovia Mortg. FSB*, 745 F. Supp. 2d 961, 968 (N.D. Cal. 2010) (taking judicial notice of the certificate of corporate existence of World Savings Bank, FSB; a letter from OTS reflecting the name change from World Savings Bank, FSB, to Wachovia Mortgage, FSB; and Wachovia Mortgage's corporate charter); *Rodriguez v. Wells Fargo Bank, N.A.*, 2011 WL 2946381, at *2 (E.D. Cal. July 21, 2011) (taking judicial notice of deed of trust); *Khan v. World Sav. Bank, FSB*, 2011 WL 133030, at *1 (N.D. Cal. Jan. 14, 2011) (taking judicial notice of the Official Certification of the Comptroller of the Currency regarding Wachovia Mortgage, FSB and Wells Fargo Bank); *Paralyzed Veterans of Am. v. McPherson*, 2008 WL 4183981, at *5-6 (N.D. Cal. Sept. 9, 2008) (taking judicial notice of information appearing on official government websites). Accordingly, The Court **GRANTS** Wells Fargo's unopposed request for judicial notice.

**B.    Threshold Issues Raised by Wells Fargo**

Wells Fargo raises a series of threshold issues, which Court's first addresses before proceeding to Plaintiffs' allegations.

**1.    Whether HAMP provides a private right of action**

Wells Fargo contends that (i) HAMP does not provide a private right of action; (ii) Plaintiffs are only incidental beneficiaries of HAMP or of the SPA; (iii) Plaintiffs lack standing to enforce HAMP; and (iv) in any event, HAMP only imposes a requirement on the lender to *consider* eligible loans for modification, not to *grant* modifications.  [Doc. No. 10 at 4.]  In support of its contentions, Wells Fargo cites two unpublished decisions: *Escobedo v. Countrywide Home Loans, Inc.*, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009) and *Villa v. Wells Fargo Bank, N.A.*, 2010 WL 935680 (S.D. Cal. Mar. 15, 2010).

The Court notes at the outset that violations of HAMP and the SPA have been alleged by plaintiffs as a variety of breach of contract and private right of action seeking judicial enforcement.  *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1066 (N.D. Cal. 2011).  Although Wells Fargo appears to conflate these two distinct causes of action, the Court finds that Plaintiffs have no private right of action under HAMP, and that even if they did, Wells Fargo has neither violated the provisions of–nor breached its duties under–HAMP or the SPA.

A federal statute creates a private right of action to enforce its provisions if the statute contains language suggesting either an express or implied intent on the part of Congress to create a private right of action.  *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979).  On the other hand, in order to state a claim for breach of contract, the plaintiff must allege the existence of a contract, consideration or performance by the plaintiff, breach of the contract by the defendant, and damages.  *Lucia*, 798 F. Supp. 2d at 1067.

13CV614

Wells Fargo is correct that courts have found no language in HAMP that supports finding a private right of action. *Lucia*, 798 F. Supp. 2d at 1066; *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009). However, since Plaintiffs allege state-law contract claims–as opposed to a private right of action–the Court must consider the state of the law as it relates to the enforcement of HAMP as a contractual agreement. *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 553-54 (N.D. Cal. May 9, 2012).

Most courts have held that the language of the SPA–whose authority derives from HAMP–does not confer on borrowers the right to enforce the agreement as a contract because borrowers are incidental, and not intended, beneficiaries of the SPA. *Escobedo*, 2009 WL 4981618 , at *3. Furthermore, even if the SPA conferred to borrowers a right of enforcement, Wells Fargo would not be liable for a contract breach because the SPA only imposes a requirement to *consider* eligible loans for modification, not to automatically *grant* those modifications. *Id*.

Therefore, as a threshold matter, Plaintiffs' breach of contract claims must be dismissed because Plaintiffs do not have the legal right to enforce the SPA or HAMP, and even if they did, Wells Fargo has not breached the SPA.

**2.** **Whether Plaintiffs' claims are ripe**

Wells Fargo also seeks to dismiss Plaintiffs' claims on the ground that they are not ripe. "Ripeness is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009).

Courts consider two factors in the ripeness analysis: (1) whether delayed review of the issue would cause hardship to the parties and (2) whether the issues are fit for judicial decision or would benefit from further factual development. *Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). Furthermore, a litigant need not "await the consummation of threatened

injury to obtain preventative relief.  If the injury is certainly impending, that is enough."  *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010).

Here, although Wells Fargo has not initiated foreclosure proceedings on Plaintiffs' property,  their monthly mortgage payments have risen from $1450 to $3530.40 per month.  This increase is an economic injury sufficient to satisfy the ripeness inquiry.  In addition, Plaintiffs allege that this increase in monthly mortgage payments will cause them to default on their loan, thus making the threat of foreclosure sufficiently "impending" to justify judicial relief.  Delayed review of the issue would cause Plaintiffs to continue paying the higher monthly mortgage amount, propelling them closer to foreclosure.  In addition, Plaintiffs' claims turn on conduct that had already occurred at the time this action was filed.  Accordingly, Plaintiffs' claims are ripe at this time for adjudication.

### 3. Whether Plaintiffs' claims are time-barred

Wells Fargo also seeks dismissal on the basis that the statute of limitations period for each of Plaintiff's claims began to run on the date the loan was closed in February 2007.  Plaintiffs' claims would accordingly be time-barred.  Plaintiffs contend that they did not discover Wells Fargo's alleged misconduct until 2011, which they argue is when the statute of limitations began to run.  In reply, Wells Fargo asserts that Plaintiffs had all loan documents in their possession in 2007 at the time the loan was closed, and any alleged wrongdoing should have been discovered by Plaintiffs then.

Wells Fargo cites three California statutes that ostensibly bar Plaintiff's claims.  [Doc. No. 10 at 5.]  First, Business and Professions Code section 17208 sets a limitations period of four years upon accrual of the cause of action for unfair business practices.  Second, Code of Civil Procedure section 338(d) sets a limitations period of three years for fraud and negligent misrepresentation which

does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud." *See also Wilson v. Century 21 Great W. Realty*, 18 Cal. Rptr. 2d 779, 306 (Cal. Ct. App. 1993) ("Negligent misrepresentation is a species of fraud."). Third, Code of Civil Procedure section 337 sets a limitations period of four years for actions based in contract.

In general, the statute of limitations begins to run from the date of consummation of the transaction. *King v. Cal.*, 784 F.2d 910, 915 (9th Cir. 1986). However, the doctrine of delayed discovery[3] can toll the limitation period until the plaintiff discovers or had reasonable opportunity to discover the alleged misconduct that forms the basis of his claims. *Id.*; *Fox. v. Ethicon End-Surgery, Inc.*, 110 P.3d 914, 919 (Cal. 2005); *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1071 (C.D. Cal. 2010) (applying *Fox* to a federal complaint).

"In order to rely on the discovery rule for delayed accrual of a cause of action, [a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 110 P.3d at 920-21; *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995); *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1159 (Cal. 2007). Although resolution of the statute of limitations issue is normally a question of fact, a plaintiff's allegations may be so deficient as to warrant dismissal at the pleading stage. *Fox*, 110 P.3d at 922.

Here, Plaintiffs' allegations are deficient, and dismissal is warranted. The Complaint shows on its face that Plaintiffs' claims are time-barred. Plaintiffs executed the loan documents in 2007, but did not file suit until 2013. Although Plaintiffs allege they "did not learn of Defendants [sic] fraudulent misrepresentation

---

[3] Some courts refer to this doctrine as "equitable tolling," or the "discovery rule." *Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1156, 1159 (Cal. 2007).

until on or about 2011," they do not plead any facts that satisfy the factors in *Fox* and would allow them to invoke the delayed discovery rule. Accordingly, because there is no basis in the FAC to apply the delayed discovery rule, and the FAC shows on its face that Plaintiffs' claims are time-barred, Plaintiffs' claims are **DISMISSED** with leave to amend.

## C. Plaintiffs' First Cause of Action: Violation of California's Unfair Competition Law ("UCL")

### 1. Plaintiffs' standing to bring a UCL claim

Wells Fargo first argues that Plaintiffs do not have standing to bring a claim under the UCL because they have not articulated an actual loss. The Court finds that Plaintiffs have not articulated an injury for standing purposes.

To have standing to bring a UCL claim, Plaintiffs must establish that they have suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct. Cal. Bus. & Prof. Code § 17204; *Hall v. Time, Inc.*, 70 Cal. Rptr. 3d 466, 467 (Cal. Ct. App. 2008); *Birdsong v. Apple*, Inc., 590 F.3d 955, 960 (9th Cir. 2009). The requisite injury "must be an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The FAC states that damages have been incurred to Plaintiffs' real property, that their home is at risk of being foreclosed, that they gave up opportunities to obtain an alternative loan with more favorable terms, and that they had to "expend monies to attempt to prevent the loss of their home by hiring counsel and experts." [FAC ¶ 39.] These general allegations do not sufficiently allege a distinct and palpable injury. For example, Plaintiffs do not provide any facts that specify what damages have been incurred to their property or why they hired experts. Plaintiffs do not allege when their mortgage payments rose to $3530.40 per month, or on what basis Plaintiffs believe their home to be at risk of foreclosure. Furthermore,

Plaintiffs' alleged loss of opportunities to obtain an alternative loan is a hypothetical injury, since the FAC provides no details of other loans available to them, whether they sought quotes from other lenders, or whether other lenders had offered more favorable loan terms to borrowers with credit ratings similar to Plaintiffs'.

The Court thus **GRANTS** Wells Fargo's motion to dismiss Plaintiffs' UCL claims for lack of standing with leave to amend.

### 2. Preemption by Home Owners' Loan Act of 1933

Next, Wells Fargo argues that Plaintiffs' claims are preempted by the federal Home Owners' Loan Act of 1933 ("HOLA"). The Court finds that Plaintiffs' claims are not preempted.

There are three ways in which federal law can preempt state law: (1) if the federal statute in question expressly states that Congress intended for it to preempt state law; (2) if the volume and complexity of federal regulation in a particular field is so pervasive that it must be inferred that Congress intended to displace state law; and (3) if state law conflicts with federal law, thereby implying preemption. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008).

In *Silvas*, a class of mortgage applicants filed suit against E*TRADE Mortgage Corporation for refusing to refund a $400 "lock-in" deposit that was charged with each mortgage refinance, despite advertising contrary intentions. *Silvas*, 514 F.3d at 1003. The *Silvas* plaintiffs sued under the Business and Professions Code for both unfair advertising and unfair competition. *Id.*

The court in *Silvas* held that HOLA preempted the entire field of state claims related to banking. *Id.* at 1005-06. In its analysis, the court cited Supreme Court dicta in which a "history of significant federal presence" justifies federal preemption of state law governing historic police powers. *Id.* at 1004. The court reasoned that federal banking laws fit this description, since "Congress has legislated in the field of banking from the days of *M'Culloch v. Maryland*." *Id.* In particular, the court

13CV614

examined 12 C.F.R. § 560.2(b), a federal regulation promulgated by the Office of

Thrift Supervision ("OTS") under authority granted by HOLA, which provides the

following illustrative list of preempted state laws:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . . .
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants; and
>
> . . . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b). The *Silvas* court concluded that all of the class action claims

regarding advertising and disclosure documents fit within section 560.2(b)(9).

*Silvas*, 514 F.3d at 1006. The court further noted that "any doubt should be resolved

in favor of preemption," in order to comply with OTS regulations. *See generally*,

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).

Courts are split on whether the types of misrepresentations alleged in this case

are preempted: "[A]lleged misrepresentations concerning 'inadequate disclosures of

fees, interest rates, or other loan terms' directly affect lending and are preempted,

while allegations which 'rely on the general duty not to misrepresent material facts'

are not preempted." *Sato v. Wachovia Mortg.*, FSB, 2011 U.S. Dist. LEXIS 75418,

at *21 (N.D. Cal. July 13, 2011) (citation omitted); *see also Plastino v. Wells Fargo

Bank*, 873 F. Supp. 2d 1179, 1185-86 (N.D. Cal. 2012). Here, the UCL claim is

based on the misrepresentations Wells Fargo made regarding Plaintiff's post-origination loan modification. Although, as the court in *Sato* acknowledged, such allegations can simultaneously be read both in favor of and against preemption, at this stage of the case, the Court construes the FAC in the manner most favorable to Plaintiffs. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Thus, the Court finds that the UCL claim is not preempted to the extent it relies on general allegations of misrepresentation and the post-origination modification process. For the same reason, Plaintiffs' claims for fraud and negligent misrepresentation are not preempted.

### 4. Plaintiffs' UCL Claim

The UCL prohibits unfair competition, including "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200. Section 17200 therefore establishes three varieties of unfair competition–acts or practices which are (1) unlawful, (2) unfair, or (3) fraudulent.

To state a claim under the "unlawfulness" prong of the UCL, plaintiffs are permitted to use the "borrowing" approach, whereby they "borrow" violations of other laws and treat them as unlawful practices under the UCL. *Boschma v. Home Loan Ctr., Inc.*, 129 Cal. Rptr. 3d 874, 893 (Cal. Ct. App. 2011).

By comparison, plaintiffs who choose to state a claim under the "unfairness" prong of the UCL are permitted to use the "tethering" approach, whereby they "tether" the UCL unfairness claim to a specific constitutional, statutory, or regulatory provision; a business practice that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; or to the violation of an established public policy. *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008); *Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 995-96 (N.D. Cal. 2012); *Sutcliffe*, 283 F.R.D. at 549.

1    Although the FAC is not entirely clear, Plaintiffs seem to have chosen to bring

2    their UCL claim under the "unfairness" prong.  They allege that Wells Fargo falsely

3    promised to fairly review Plaintiffs' request for a loan modification; that it

4    misrepresented Plaintiffs' qualification and entitlement to a loan modification; that it

5    intentionally understaffed its departments and purposefully staffed available

6    positions with individuals who were unable, incompetent, or directed not to

7    cooperate with borrowers; and that it engaged in practices that were intended to

8    frustrate borrowers–such as continuously losing their documents and asking them to

9    resubmit documentation.  Plaintiffs allege that these practices were put in place by

10   Wells Fargo in order to deter borrowers from seeking loan modifications, as well as

11   to shorten the period of time before borrowers would inevitably default on their

12   loans.  [FAC ¶ 37.]

13       Since Plaintiffs do not purport to bring their UCL claim under the

14   "unlawfulness" prong, Wells Fargo's argument that "Plaintiffs cannot borrow from

15   any unlawful act" is inapposite.  However, the Court agrees that Plaintiffs'

16   complaint fails to state facts that "tether" their UCL claim to any constitutional,

17   statutory, or regulatory provision; a business practice that is immoral, unethical,

18   oppressive, unscrupulous, or substantially injurious to consumers; or to the violation

19   of an established public policy.  The Court thus **GRANTS** Wells Fargo's motion to

20   dismiss Plaintiffs' UCL claim based both on Plaintiffs' lack of standing and their

21   failure to satisfy the plausibility standard in *Iqbal* and *Twombly*.  Plaintiff is granted

22   leave to amend.

23   **D.    Plaintiffs' Second Cause of Action:  Fraud**

24       To state a claim for fraud under California law, Plaintiffs must allege the

25   following:  (1) misrepresentation (a false representation, concealment, or

26   nondisclosure), (2) knowledge of the falsity of the misrepresentation, (3) intent to

27   induce reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting

28

damage. *Small v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1058 (E.D. Cal. 2009). Justifiable reliance occurs when "the defendant's misrepresentation is an immediate cause of the plaintiff's conduct . . . and when, absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction." *Cadlo v. Owens-Illinois,* Inc., 23 Cal. Rptr. 3d 1, 5 (Cal. Ct. App. 2004). Claims for fraud must satisfy the heightened pleading requirement of Rule 9(b). *Champlaie*, 706 F. Supp. 2d at 1058. Accordingly, each element in a cause of action for fraud must be factually and specifically alleged with particularity. *Cadlo*, 23 Cal. Rptr. 3d at 5.

The FAC fails to satisfy the heightened pleading requirement for fraud. Plaintiffs attempt to allege elements (1) and (2) of fraud by stating: "Defendants made material misrepresentations concerning the terms of Plaintiffs' Loan which they knew or had reasons to believe was false. The misrepresentation extended to Plaintiffs' income, repayment of the loan, duration of the loan, the number of loans consummated and the interest rates on the loans." [FAC ¶ 42.] No factual detail is provided to support what misrepresentations were made, who made them, when they were made, how they were concealed, or on what basis Plaintiffs assert Wells Fargo knew its representations to be false.

Plaintiffs attempt to allege element (3) as follows: "The representations when made were false . . . and were intended to induce and did induce Plaintiffs to consummate loans which they could not afford . . . and intended to induce and did induce Plaintiffs to forgo opportunities to obtain alternative lending with more favorable terms." [FAC ¶ 43.] These conclusory allegations do not satisfy Rule 9(b)'s heightened pleading standard.

Similarly, Plaintiffs fail to plead element (4) with particularity, instead stating that "Plaintiffs justifiably relied on Defendant's misrepresentations." [FAC ¶ 44.]

This is also a conclusory allegation, since Plaintiffs do not allege that they would have taken a different course of action had Wells Fargo not made the alleged misrepresentations.

Finally, as referenced above in Section III.C.1, Plaintiffs have failed to plead element (5) with facts sufficient to survive dismissal under *Iqbal* and *Twombly*, much less the particularity required for allegations of fraud under Rule 9(b).

Accordingly, the Court **GRANTS** Wells Fargo's motion to dismiss Plaintiffs' claims of fraud, with leave to amend.

## E.     Plaintiffs' Third Cause of Action:  Negligent Misrepresentation

In order to state a claim for negligent misrepresentation, Plaintiffs must allege a (1) misrepresentation of a past or existing material fact without reasonable ground for believing it to be true, (2) intent to induce another's reliance on the misrepresented fact, (3) ignorance of the truth, (4) justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damages. *Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir. 1996); *Shamsian v. Atl. Richfield Co.*, 132 Cal. Rptr. 2d 635, 647 (Cal. Ct. App. 2003).

In California, negligence is a separate and distinct tort from negligent misrepresentation.  *Small v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003); *Bily v. Arthur Young & Co.*, 834 P.2d 745, 768 (Cal. 1992).  However, both torts require the existence of some type of legal relationship giving rise to a duty of care.  *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1523 (N.D. Cal. 1990). Furthermore, since it is well-settled in the Ninth Circuit that negligent misrepresentation claims are a species of fraud, Plaintiffs' allegations must satisfy Rule 9(b)'s heightened pleading requirement.  *Harvey*, 906 F. Supp. 2d at 995; *Cadlo*, 23 Cal. Rptr. 3d at 5.

As a general rule, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. &*

*Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991) (citations omitted).

However, there are two exceptions to this general rule. First, a lender may owe its borrower a duty of care when its activities exceed those of a conventional lender. *Id.* at 57. This exception applies when the lender's conduct at issue is not designed only to protect the lender, but is rather intended to induce a borrower to enter into a particular loan transaction. *Id.* at 1096-97; *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1060 (E.D. Cal. 2009). Second, a lender may owe its borrower a duty of care depending on a six-factor test established by the California Supreme Court in *Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. 1958). *See also Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1197 (9th Cir. 2001). The six-factor test includes:

(1) the extent to which the transaction was intended to affect the plaintiff,
(2) the foreseeability of harm to the plaintiff,
(3) the degree of certainty that the plaintiff suffered injury,
(4) the closeness of the connection between the defendant's conduct and the injury suffered,
(5) the moral blame attached to the defendant's conduct, and
(6) the policy of preventing future harm.

*Id.*; *Nymark*, 283 Cal. Rptr. at 58-59 (applying the above 6-factor test to determine whether a financial institution owes a duty of care to a borrower-client). The California Supreme Court later added three additional factors to consider:

(7) whether liability would in that particular case be out of proportion to fault,
(8) whether parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence, and contracting power, and
(9) the potential adverse impact on the class of defendants upon whom the duty is imposed.

*Roe*, 273 F.3d at 1198; *Champlaie*, 706 F. Supp. 2d at 1061.

Here, Plaintiffs allege that Wells Fargo made representations to them that a loan modification would not be possible unless Plaintiffs defaulted on their loan. [FAC ¶ 47.] Plaintiffs further allege that "Wells Fargo intended to induce Plaintiffs

13CV614

to miss mortgage payments and default on the loan so that it could initiate the foreclosure process, charge Plaintiffs late fees and attorney's fees, and eventually foreclose on the Property without offering Plaintiffs a loan modification." [FAC ¶ 49.]

Plaintiffs have sufficiently alleged that Wells Fargo owed Plaintiffs a duty of care in processing their loan modification request. Pursuant to the first exception (that a duty is owed when the lender's activities exceed those of a conventional lender), Wells Fargo's alleged misrepresentation–that Plaintiffs must default on their loan in order to secure a modification–would presumably be intended to induce the borrowers to either maintain their current unfavorable loan terms or, alternatively, to default and permit Wells Fargo to foreclose on their property. The *Nymark* and *Champlaie* courts found that in such a situation–when the lender takes action intended to induce a borrower to enter into a particular loan transaction that is not only intended to protect the lender–the lender's activities have exceeded those of a conventional lender. It follows that the lender may owe a duty of care to its borrower, which includes the duty to accurately represent the terms of a loan modification. *Champlaie*, 706 F. Supp. 2d at 1060.

Even if the first exception did not apply, however, the multi-factor test laid out for the second exception also leads to the same conclusion. Plaintiffs' mortgage payments rose from $1450 to $3530.40 per month without a loan modification. This increase has placed financial strain upon Plaintiffs (factor 1), a result both foreseeable (factor 2) and certain to occur (factor 3) as a direct result of Wells Fargo's misrepresentation (factor 4). Since Wells Fargo drafted the terms of the loan, holds the note, and exerted full control over whether applications for loan modifications proceeded, Wells Fargo also bore the "moral blame" for such a consequence (factor 5). Finally, considering Wells Fargo's alleged past conduct of deceptive practices associated with loan modifications (see the DOJ press release

discussed in Section I of this order), public policy favors placing a duty of care on Wells Fargo in order to protect future borrowers (factor 6).

The foregoing notwithstanding, Plaintiffs' FAC does not satisfy the particularity requirements of Rule 9(b). Plaintiffs allege Wells Fargo represented to them that defaulting on their loan was a necessary prerequisite for a loan modification (element (1) of a claim for negligent misrepresentation). However, the FAC does not provide any details on when this representation was made, who made it, or in what context. Similarly, the FAC does not address any of the remaining elements of negligent misrepresentation, except to allege in a conclusory fashion that Wells Fargo intended to induce reliance and that Plaintiffs both relied on the misrepresentation and were ignorant of whether it was true.

The Court **GRANTS** Wells Fargo's motion to dismiss the negligent misrepresentation claim, with leave to amend.

**F.     Plaintiffs' Fourth Cause of Action:  Promissory Estoppel**

The doctrine of promissory estoppel makes a promise contractually-binding under certain circumstances, even if it lacks consideration in the usual sense of something bargained for and given in exchange. *Youngman v. Nev. Irr. Dist.*, 449 P.2d 462, 468 (Cal. 1969). A claim for promissory estoppel consists of four elements: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance. *Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010).

Furthermore, mortgages and deeds of trust–and any agreement to modify these contracts–must comply with the statute of frauds. *Clark*, 732 F. Supp. 2d at 1044; *Secrest v. Security Nat'l Mortg. Loan Trust 2002-2*, 84 Cal. Rptr. 3d 275, 282 (Cal. Ct. App. 2008). The statute of frauds bars the modification of a written contract by

oral agreement, unless that oral agreement is memorialized in writing and signed by the party against whom the contract is sought to be enforced. Cal. Civ. Code §§ 1624, 1698. An oral agreement to provide a loan modification is thus similarly subject to the statute of frauds. *Clark*, 732 F. Supp. 2d at 1044; *Basham v. Pac. Funding Grp.*, 2010 WL 2902368, at *6 (E.D. Cal. July 22, 2010); *Justo v. Indymac Bancorp.*, 2010 WL 623715, at *7 (C.D. Cal. Feb. 19, 2010).

Here, Plaintiffs allege that Wells Fargo "made promises to modify the terms of Plaintiff's Loan, which was to include interest rate and principal reduction." [FAC ¶ 52.] Plaintiffs also allege that Wells Fargo intended to induce Plaintiffs to "continue paying higher mortgage payments and interest, instead of securing alternative lending with more favorable terms." [FAC ¶¶ 54-55.]

Plaintiffs pleadings are insufficient, as they provide no facts that suggest that Wells Fargo's promises were memorialized in writing and signed by Wells Fargo, despite Plaintiffs' assertions that Wells Fargo provided "countless written correspondence with Plaintiffs regarding the Subject Loan" and "communication given to Plaintiffs that if they stop making payments on their loan, they will be approved for a loan modification." [Doc. No. 11 at 9.] Accordingly, Plaintiffs' claim for promissory estoppel is barred by the statute of frauds.

Independent of the defects associated with the statute of frauds, Plaintiffs also fail to allege with any factual support the details surrounding Wells Fargo's promise to Plaintiffs to modify their loan. Since the FAC does not state who made the promise, when that promise was made, what the promise entailed, or any other contextual clues that would provide factual support for the allegation, element (1) is only possible, but not plausible, as is required to survive a motion to dismiss under the plausibility standard defined by *Twombly* and *Iqbal*.

Elements (2) and (3) of promissory estoppel are also deficient, as Plaintiffs state nothing but conclusory allegations in support of their claim. [*See* FAC ¶¶ 54-

55.]  Element (4) similarly fails because Plaintiffs do not allege an actual injury caused by their reliance on Wells Fargo's promise.  It is not clear from the FAC whether they have already been forced to pay higher mortgage payments and interest, and whether the loss of alternative lending opportunities is a direct result of Wells Fargo's promise.  Since Plaintiffs do not state what alternative lending opportunities were available to them, or whether they would have sought an alternative lender had Wells Fargo not made the alleged promise, the Court finds that none of the four elements of promissory estoppel have been sufficiently alleged.

Accordingly, the Court **GRANTS** Wells Fargo's motion to dismiss Plaintiffs' promissory estoppel claims, with leave to amend.

**G.  Plaintiffs' Fifth Cause of Action:  Breach of the SPA and HAMP Contracts as a Third Party Beneficiary**

The elements of a cause of action for breach of contract are:  (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages.  *First Commercial Mortg. Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33 (Cal. Ct. App. 2001); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 549 (N.D. Cal. May 29, 2012).

The SPA and HAMP represent contracts between Wells Fargo and the federal government.  *Lucia*, 798 F. Supp. 2d at 1062-63.  In order for third parties like Plaintiffs to enforce the contracts, they must show that each contract reflects the express or implied intention of the contracting parties to benefit the third party–in other words, that the third party is an "intended," not "incidental," beneficiary.  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210-11 (9th Cir. 1999).  This rule is echoed in California Civil Code section 1559, which allows the enforcement of contracts by a third party if the contract was made *expressly* for the benefit of the third party.

Many district courts in the Ninth Circuit have determined that individual

borrowers are not intended third party beneficiaries of the SPA. *See,* e.g., *Lucia*, 798 F. Supp. 2d at 1071; *Velasco v. Aurora Loan Servs. LLC*, 2012 WL 569582, at *3 (C.D. Cal. Feb. 21, 2012). This determination is consistent with Ninth Circuit case law finding no enforceable private right of action under HAMP, from which the SPA is authorized (see Section III.B.1 of this order).

The Court **GRANTS** Wells Fargo's motion to dismiss Plaintiffs' breach of contract claims *without* leave to amend, since amendment cannot overcome the deficiencies discussed above.

### IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motions for judicial notice and dismissal of Plaintiffs' FAC, with leave to amend where indicated. Plaintiffs are granted leave to file a Second Amended Complaint **no later than August 16, 2013**.

**IT IS SO ORDERED.**

DATED: July 31, 2013

Hon. Michael M. Anello
United States District Judge

13CV614